## PRUDENTIAL INS. CO. of AMERICA v. TIDWELL.

No. 20353. Opinion Filed Feb. 14, 1933.

Withdrawn, Corrected, Refiled, and Rehearing Denied April 4, 1933.

J. S. Ross and S. J. Clay, for plaintiff in error.

Rainey, Flynn, Green & Anderson and M. M. Gibbens, for defendant in error.

BUSBY, J. This is an appeal from a judgment in the sum of $1,000 rendered in the district court of Oklahoma county in favor of Anna R. Tidwell, defendant in error, against the Prudential Insurance Company, plaintiff in error herein.

For the purpose of convenience we will refer to the parties as they appeared in the trial court. On November 15, 1928, this action was commenced in the district court of Oklahoma county by Anna R. Tidwell as beneficiary under a life insurance policy in which her deceased husband, Ralph D. Tidwell, was the insured and the defendant was the insurer. The policy was for the face amount of $1,000 in any event and provided for an additional liability on the part of the defendant company in the sum of $1,000 in the event the death of the insured occurred "as a result * * * of bodily injuries effected solely through **external violent and accidental means.**"

Plaintiff in her petition alleged that the insured met his death on July 24, 1928, and while the policy was in force, as a result of bodily injury effected through "external,

violent and accidental means," by accidentally driving the automobile in which he was riding into another automobile. She asked judgment in the sum of $2,000. In its answer defendant admitted liability under the policy in the sum of $1,000 (less certain minor deductions claimed) for the death of the insured. It denied liability under the accidental death benefit clause, stating in that connection that the automobile collision which resulted in the death of the insured was brought about "by the insured willfully, intentionally and deliberately driving the automobile in which he was riding into the car of another." (Quotation from answer of defendant.)

While the cause was pending in the trial court the $1,000 death benefit was paid. On the 9th day of April the cause was tried to a jury on the issues formed by the pleadings. The jury returned a verdict in favor of the plaintiff, on which verdict judgment was rendered. On appeal the cause has been presented to this court on briefs and oral argument. The case has been ably presented by counsel on both sides.

The record discloses that on the afternoon of July 24, 1928, a Mr. Collins, together with two young ladies by the name of Dora and Thelma Young, cousins of the plaintiff, went to the home of the deceased Tidwell in Oklahoma City. After they had been there a few minutes the deceased arrived driving a Star car. The deceased, starting to drive around the Collins car which was in the driveway, struck it. Some words were spoken between the men and a physical encounter ensued. While this was going on, the two young girls backed Collins' car out of the driveway and drove north about half a block. Collins abandoned the difficulty with Tidwell and joined the girls in this car and the three of them drove in a northerly direction. In the meantime Tidwell backed his own car into the street and started north in pursuit. About four or five blocks from the Tidwell home, a collision occurred between the two cars, killing Tidwell. Four witnesses gave their version of the details of this collision. These were Mr. Collins, Miss Thelma Young, who was in the car with Collins, a Mr. Frank Reed and Mrs. Lola Hoofart, the latter two being disinterested bystanders. There was some descrepancy in the testimony of these witnesses. Collins testified that he observed through the rear vision mirror Tidwell coming and he slowed down; that Tidwell's car struck his in the rear, near the left hand rear wheel. Miss Young's testimony cor-

responded to his. Mrs. Hoofart stated that Tidwell's car got past the Collins car and that Collins' car then struck the Tidwell car. Mrs. Hoofart also testified that just prior to the crash Tidwell's foot was out on the left running board of his car. No declarations appear to have been made by the deceased at the time or just before the collision shedding any direct light on his intentions.

The defendant urges in support of its appeal four contentions. The first contention is stated by its counsel in the following language:

"That Tidwell deliberately, voluntarily, and intentionally used and drove his own car for the purpose of overtaking Collins in order that he, Tidwell, might continue to aggravate and provoke the fight which he had just started with Collins, and that the voluntary, deliberate, and intentional act of Tidwell in driving his car was the means in this case and since Tidwell voluntarily, deliberately, and intentionally used his car for that purpose as all of the evidence in the case shows, the means, that is, his own voluntary act of using his car and driving it for this purpose, were not accidental means, and, therefore, as a matter of law, we were entitled to judgment in the case."

Second, that the evidence shows that the death of the deceased was brought about by the intentional acts of the deceased, and was, therefore, not the result of accidental means within the terms of the policy. That the defendant was, therefore, entitled to prevail as a matter of law. Third, that if there existed a question of fact for the determination of the jury, the same was improperly submitted to the jury by the court. In this connection the defendant urges error in the giving and refusing of certain instructions hereafter discussed. Fourth, that an improper and prejudicial statement was made by counsel for the plaintiff in presenting the case to the jury, which entitled plaintiff to a new trial.

If either of these positions is well taken, the judgment cannot stand.

It is conceded by both parties that the death of the deceased was brought about by external and violent means within the meaning of the contract of insurance; the question herein being whether the means was also accidental. Accidental means something "unusual," and "unexpected" and "unintentional." It should be borne in mind that in this case accidental refers to the means rather than the result.

The first contention of the defendant may

be appropriately divided so that it presents two questions: First. Does the fact that the defendant, at time of the occurrence of the collision, was engaged in voluntarily driving his automobile along the street, make his subsequent death the result of an intentional act, rather than a death by accidental means? Second. Assuming that the motive of the deceased at the time he drove his car was to subsequently provoke a difficulty with Collins, does the motive, coupled with the voluntary act of driving the car, make his death the result of his own intentional acts as distinguished from a death resulting from accidental means?

We will consider these questions in the inverse order. What effect did the unlawful motive of Tidwell have upon the case? Did it change in any way the nature of his acts? It seems to be the accepted rule in a majority of the states that, in the absence of any provision of the policy excluding the risk of death while the deceased was engaged in a violation of law, the insurer is liable, unless the policy was obtained with a view to the commission of the crime. Zurich General Accident & Liability Insurance Co. v. Flickinger, 33 Fed. (2d) 853, 68 A. L. R. 161 (in which case numerous authorities in support of this rule are cited): Jordan v. Logia Suprema, 23 Ariz. 584, 24 A. L. R. 974, 206 P. 162. It is likewise the rule accepted in a majority of jurisdictions that injuries received by an insured while engaged in quarreling or fighting, which injuries could not have been reasonably anticipated, are covered by the terms of an accident policy unless the policy excepts that class of liability. 1 C. J. 431, par. 77, and authorities cited in the notes; Union Accident Co. v. Willis, 44 Okla. 578, 145 P. 812; Carroll v. Fidelity, etc., Co., 137 Fed. 1012; Union Casualty & Surety Co. v. Harroll, 98 Tenn. 591, 40 S. W. 1080.

In view of these authorities, it would seem contrary to all reason that the mere contemplation of a future violation of law, or an intention to resume a quarrel, such as it is urged that the deceased Tidwell had in mind while he was driving his car along the street, would affect the liability of the defendant in this case. Of course, it was proper for the jury to consider such motive on the part of the deceased for the purpose of determining whether the automobile collision was accidentally or intentionally brought about by Tidwell.

We will now pass to a consideration of the effect of the fact that, at the time of the collision, Tidwell was voluntarily driving his car. The rule of law applicable, which in itself answers this question, is stated by the Supreme Court of the United States, in the case of United States Mutual Accident Association v. Barry, 33 L. Ed. 60, at p. 66, 9 Sup. Ct. Rep. 755, 131 U. S. 100. In that case the death of the insured resulted from injuries received by jumping off a platform, and it was urged that the jumping being a voluntary act, it could not be termed an accident. In other words, that the insured did nothing but that which he intended to do. The court, however, held that if, in jumping or alighting on the ground, any unforeseen or involuntary movement occurred which caused the deceased to alight on the ground in a different manner than that in which he intended or expected to alight, and injuries resulted therefrom, such injuries would be due to accidental means. In the opinion, the court stated the rule in this language:

"If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, **in the act which precedes the injury, something unforeseen, unexpected, unusual occurs, which produces the injury,** then the injury has resulted through accidental means."

Applying this rule to the case at bar, it will be seen that the act which preceded the injury was that of driving the automobile down the street. If, in this act, such an unforeseen, unexpected, and unusual something occurred which produced the injury, then the injury and death resulted through accidental means. Was the collision unusual, unforeseen, and unexpected? It is quite apparent that it was, unless the deceased intentionally drove his car into that of Collins. This brings us to consideration of the second contention of the defendant. The collision occurred during the act of driving the car which preceded the injury. The question of whether this rendered the death of the deceased the result of accidental means depends upon whether the collision was something unforeseen, unexpected, and unusual, or was brought about by the deceased intentionally driving his car into that of Collins.

The defendant takes the position that the evidence shows that the deceased deliberately and intentionally drove his car into the car of Collins, and that therefore the collision was intentional, and that the resulting death was an accidental **result** of

an intentional act as distinguished from death resulting by accidental **means** as contemplated by the policy of insurance. With this contention we cannot agree. It is true that an inference that the deceased intended to collide with the car of Collins may be drawn from the evidence, but the inference that he had such intention is by no means conclusive. It may with equal logic be inferred from the evidence that the deceased intended only to drive around Collins with a view of stopping him later and that he miscalculated the distance between the two cars and that the collision resulted because of such miscalculation. Other equally logical inferences to the effect that, in the act which preceded the injury, something unexpected, unforeseen, and unusual occurred, may be drawn from the proof in the case. We therefore conclude that the court committed no error in submitting the cause to the jury on appropriate instructions.

Complaint is made that the court erroneously gave instruction number 5, reading as follows:

"In determining whether the fatal injury to Ralph D. Tidwell was caused by accidental means, you are instructed that if in the act which preceded the injury something unforeseen, unexpected, or involuntarily occurred or some mishap, slip or miscalculation occurred which resulted in the injuries, then such injuries were caused by accidental means. You are further instructed, however, that a result which is such as follows from ordinary means, employed voluntarily, and in a not unusual or unexpected way cannot be called a result effected by accidental means."

An examination of this instruction discloses that it correctly states the law applicable to this character of cases and that it in substance is approved by the Supreme Court of the United States. United States Mutual Accident Association v. Barry, supra. This instruction has also been approved by the Federal Circuit Court of Appeals in U. S. Fidelity & Guaranty Co. v. Blum, 270 Fed. 946.

The defendant also complains of instruction No. 6 by the trial court, which reads as follows:

"You are further instructed that in the absence of proof to the contrary, external and violent injuries are presumed to have been effected by accidental means."

Defendant urges in support of its objection that no presumption that the means was accidental existed when the means is known. It will be noted in connection with the presumption suggested in this instruction that it refers to the accidental character of the means employed rather than the means themselves. The death of Tidwell resulted from the automobile collision. The principal question for determination in the trial court was whether this collision was intentionally or accidentally brought about by the deceased. As we have already seen, the evidence on this point was extremely uncertain and susceptible of different interpretations.

The first question in considering this phase of the case is: Does the presumption mentioned in the instruction exist? Its existence finds ample recognition in the authorities. Baciocco v. Prudential Insurance Co., 22 Fed. (2d) 700; International Travelers' Association v. Bettis (Tex.) 3 S. W. (2d) 479; Mutual Life Ins. Co. of New York v. Hatten, 17 Fed. (2d) 889.

In the Baciocco Case, supra, drowning was the means of death, and the point in dispute was whether it was accidental or intentional on the part of the insured. The presumption that it was accidental was recognized in support of a judgment based upon the accidental clause of an insurance policy. Numerous additional authorities appear in the opinion in support of this presumption. This presumption is based upon common experience and common sense, which teaches that a person will not intentionally commit an act which he knows will inflict serious bodily injury or possibly death on himself.

In connection with this contention the defendant places considerable stress upon the holding of the Missouri Supreme Court in the case of Clara Bell Caldwell v. Travelers' Insurance Co., 305 Mo. 619, 39 A. L. R. 56. In that case the Missouri court, in addition to announcing a distinction between accidental means and accidental result, failed to apply the presumption here under consideration. There the action was based upon a death resulting from a surgical operation "voluntarily undertaken and admittedly performed in a skillful manner." The fact that the means of death was voluntary as distinguished from accidental was conceded. It was conceded that the operation was performed in a skillful manner, that there was no slip or miscalculation in the act which preceded the injury. Therefore, there exists no reason to invoke a presumption to determine the existence of an admitted and established

fact. As we have previously pointed out, the basis of the presumption is that the person will not commit an act which may logically expose him to serious injury. Where it is conceded, however, that such an act has been voluntarily committed and that no slip or miscalculation occurred, it would be ridiculous to apply a presumption to the contrary.

In the case at bar, as we have previously observed, the question to be decided was whether there was in the act which preceded the injury something unforeseen, unexpected, or unusual; some slip or miscalculation which caused the death, and rendered the means accidental, or whether the deceased intentionally drove his car into that of Collins. In connection with this question there exists in the evidence such uncertainty and indefiniteness as to whether the collision was voluntary or accidental, that it was entirely appropriate that the jury consider this presumption with the power on their part to disregard it in the event there was evidence to the contrary. It is a rebuttable presumption and disappears upon the production of evidence to the contrary. We, therefore, conclude that instruction No. 6 correctly states the law of this state with reference to the existence of the presumption, and that its application to this case was appropriate.

It is interesting to note that the rule announced in the Caldwell Case, supra, which case is strongly urged by the defendant in support of his position, was considered by the same court (Missouri) in the subsequent case of Berlan v. Metropolitan Life Insurance Co., 24 S. W. (2d) 686, and a distinction recognized which is peculiarly adapted to the facts in the case at bar.

In that case the plaintiff claimed the right to recover under a similar policy by reason of injuries suffered by him while he was endeavoring to move a safe with a crowbar, when he slipped and the upper end of the crowbar struck his left groin, resulting in the injury complained of. In the opinion in the Berlan Case, the Missouri court said:

"The claim in that case was based upon an allegation that a surgical operation for two hernias resulted in an obstruction of the bowels and death. The court reasoned that, assuming the obstruction of the bowels and the ensuing death were the unusual and unexpected result of the operation, skillfully done at the request of the insured, intentionally done, the death was not the result of accidental means. The court held the true rule is that, where an unusual or unexpected result occurs by reason of the doing by the insured of an intentional act, where no mischance, mishap, or slip occurred in the doing of the act itself, the ensuing injury or death is not caused through accidental means; that it must be made to appear that the means used to produce the injury was accidental, and it is not enough that the result may be unusual, unexpected, or unforeseen,—citing, analyzing, and applying numerous cases.

"This announcement of the rule is enlightening and furnishes a safe and reasonable guide, but in none of the cases so analyzed do we have the facts as presented here. If plaintiff's testimony is true, and it must be so accepted for the purpose of the demurrer, the alleged accident which caused the injury was unexpected, unforeseen, and lay either in the slipping of plaintiff or his fall against the crowbar, or both, The ruling in the Caldwell Case does not apply here, or if it does, it is in plaintiff's favor."

The collision which occurred in the case at bar, while the deceased was driving his automobile along the street, is comparable to the slipping of the plaintiff and his falling against the crowbar in the Berlan Case, at least, under the instruction of the court the jury in the case at bar so determined.

The defendant also urges that the trial court committed error in refusing to give its requested instruction No. 3. This instruction undertakes to state the law respecting liability under an accidental death clause where the insured is at fault in bringing about or provoking the situation. It is based on the hypothesis that Collins drove his car into that of Tidwell's. The instruction was evidently prompted by that portion of Mrs. Lola Hoofart's testimony where she stated that the automobile of the insured was struck by that of Collins. The particular testimony referred to was not in harmony with the theory of either of the parties to this case as outlined by their pleadings and the opening statements. The defendant itself criticizes this testimony in its brief and suggests that it is unreasonable and highly improbable.

An examination of the instructions as a whole discloses that they correctly state the law and cover the issues as defined by the pleadings. An examination of the particular requested instruction discloses that it is objectionable in that it does not accurately state the refinements of the law necessary to create or excuse from liability under an

"accidental means" clause in an insurance policy where the insured is at fault in provoking the situation. For these reasons, we find that the court committed no error in refusing this instruction.

Defendant contends that a new trial should have been granted because counsel for the plaintiff improperly stated in argument, in substance, "that a verdict by the jury for the defendant would be in effect a verdict against the beneficiaries of the members of the jury who carried accident insurance." This remark was promptly objected to when made and the objection sustained by the trial court. The court then immediately admonished the jury not to consider it. Counsel for the plaintiff desisted from further statements of this character. Under the previous decisions of this court, we hold that this remark was not sufficient to justify disturbing the judgment. Coalgate v. Bross, 25 Okla. 244, 107 P. 425; McDonald v. Cobb, 52 Okla. 581, 153 P. 138.

The judgment of the trial court is therefore in all things affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and WELCH, JJ., concur.

Note.—See under (1) annotation in 27 L. R. A. (N. S.) 480; 14 R. C. L. 1249; R. C. L. Perm. Supp. p. 3790; R. C. L. Pocket Part, title "Insurance," § 427. (6) annotation in 46 L. R. A. 641; 38 L. R. A. (N. S.) 1130; L. R. A. 1918D, 15; 2 R. C. L. 436; R. C. L. Perm. Supp. p. 468; R. C. L. Pocket Part, title "Arguments of Counsel," § 35.